# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

HEATH R. BARKER,

    Petitioner,

v.                                                    No. 4:21-cv-0742-P

DIRECTOR, TDCJ-CID,

    Respondent.

## MEMORANDUM OPINION AND ORDER

Before the Court is the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Heath R. Barker, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice, against Respondent, the Director of TDCJ. *See* Pet. & Br., ECF Nos. 1, 2. After considering the pleadings and relief sought by Barker, the Court has concluded that the petition should be DENIED.

## BACKGROUND

### A. Procedural History

Barker was charged in Tarrant County, Texas, Case No. 1477288R, with one count of continuous sexual abuse of a child younger than 14 years of age. *See* TEX. PENAL CODE ANN. § 21.02. On November 28, 2016, a jury found him guilty and assessed his punishment at 40 years' confinement. *See* Admin. R. 2:141–43, ECF No. 13. Barker's conviction was affirmed on direct appeal. *See Barker v. State*, No. 07-17-00024-CR, 2018 WL 3637262, at *4 (Tex. App.—Amarillo July 31, 2018, pet. ref'd). The Texas Court of Criminal Appeals (TCCA) refused his petition for discretionary review. *See* Admin. R. 15, ECF No. 13.

Barker then filed a state habeas application, challenging his conviction on the ground that his trial counsel, Ray Hall Jr. and Brandon Weaver, rendered ineffective assistance at his trial. The TCCA

remanded the case to the trial court for an evidentiary hearing on Barker's allegations. Following the hearing, the record was forwarded to the TCCA, which denied his petition without written order. *See* Admin. R. 23, ECF No. 13.

## B. Factual Background

The Texas Seventh Court of Appeals summarized the background of Barker's case as follows:

> The complainant in this case, A.M., is appellant's daughter. Since her birth, A.M. lived with her great-aunt, L.M., but she occasionally spent weekends with her father. After returning home from one of these visits, A.M. was getting into the bathtub when L.M. observed that something was written on A.M.'s backside. On one of A.M.'s buttocks, the words, "I'm going in there," were written, along with an arrow pointing towards the cleft between A.M.'s buttocks. On the other side, the words, "I heart you," were written. L.M. asked who had written on her, and A.M. replied that it was appellant. L.M. took a photograph, which she later provided to police, of A.M.'s buttocks. L.M. asked A.M. whether appellant had "done anything else like touch her on her privates or anything." A.M. said yes, and told L.M. that appellant had put his hands in her panties and "poked her in the front and the back." L.M. determined to contact the police the next day and asked no further questions. The following morning, A.M. told L.M. that appellant had been "doing that" since she was seven. A.M. was ten years old at the time.

2018 WL 3637262, at *1.

Forensic interviewer Samantha Shircliff testified at trial. *See* Admin. R. 5:192–212, ECF No. 13. She testified that, during her forensic interview of A.M., A.M. provided "sensory" and "peripheral details" related to the abuse. *Id*. at 5:204. Shircliff explained that it was "hard to make those details up" without having experienced the event being referenced. *Id*. at 5:205. Shircliff further stated that forensic interviewers use those types of details to "get a feel about whether or not" to be concerned that a child has been "coached" to give a certain statement. *Id*. She testified that she did not have any concerns that A.M. had been "coached." *Id*. at 5:206. Shircliff also testified that she would

describe some of A.M.'s statements as "script memories" and frequently saw these repeated types of memories in "children who have been chronically sexually abused." *Id.* at 5:207–08. In Barker's cross-examination of Shircliff, she explained the purpose of her interview and testimony presented to the jury, stating, "I don't determine whether or not anyone's telling the truth." *Id.* at 5:215.

Barker argues that his trial counsel did not cross-examine Shircliff regarding her statements and instead focused on A.M.'s behavior during the videotaped forensic interview.

## ISSUE

In his sole ground for relief, Barker alleges that he "was denied effective assistance of counsel under [the] 6th Amend[ment of the Constitution] when trial counsel failed to obtain and utilize an expert on forensic issues." Pet. 6, ECF No. 1. Specifically, Barker claims that trial counsel should have used an expert to contradict Shircliff's testimony regarding "various peripheral and sensory details provided by the child" and her statement that those details are important "because it's hard to make those details up."

## RULE 5 STATEMENT

Respondent does not believe that the petition is time-barred or subject to the successive-petition bar. In addition, Respondent does not believe that Barker's claim is unexhausted or otherwise procedurally barred. *See* Resp't Answer 5-6, ECF No. 12.

## LEGAL STANDARD

### A. 28 U.S.C. § 2254

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts considering the record before the state court. 28 U.S.C. § 2254(d)(1)–(2); *Harrington v. Richter*,

562 U.S. 86, 100–01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Id.* at 100 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This means that, if any fairminded jurist could believe that the state court *reasonably*, but not necessarily *correctly*, applied "clearly established Federal law, as determined by the Supreme Court" in rejecting a petitioner's claim, then the petitioner is not entitled to relief. *See Sanchez v. Davis*, 936 F.3d 300, 304–05 (5th Cir. 2019); *see also Richter*, 562 U.S. at 102. Federal habeas relief is not a substitute for ordinary error correction through direct appeal. *Sanchez*, 936 F.3d at 305 (citation omitted). It is a difficult standard to meet because it was meant to be. *Id.*

A state court's factual findings are "presumed to be correct," and an applicant has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Barbee v. Davis*, 728 F. App'x 259, 263 (5th Cir. 2018) (quoting § 2254(e)(2)). "The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Id.* (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)); *see Pippin v. Dretke*, 434 F.3d 782, 785 (5th Cir. 2005) (citations omitted). Whether a lawyer has rendered ineffective assistance is a mixed question of law and fact. *Sanchez*, 936 F.3d at 304 (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984)).[1]

## B. Ineffective Assistance of Counsel

To prevail on a claim of constitutionally ineffective assistance of counsel, a petitioner must show (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense."

---

[1] Such mixed questions are reviewed under 28 U.S.C. § 2254(d)(1). *See Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (citing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)).

*Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 687).

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 688). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

"Surmounting *Strickland's* high bar is never an easy task." *Id*. at 105 (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Even under de novo review, the standard for judging counsel's representation is a most deferential one. *Id.* Unlike a later-reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. *Id.* It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id. "*The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id*. (quoting *Strickland*, 466 U.S. at 690).

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *Id.* The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. *Id.* The *Strickland* standard is a general one, so the range of reasonable applications is

substantial. *Id*. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *Id*. When § 2254(d) applies, the question is not whether counsel's actions were reasonable. *Id*. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id*.

## ANALYSIS

At the state habeas evidentiary hearing, Barker's defense attorneys submitted affidavits to the state trial court and testified about their investigation of Barker's case and determination of the need for expert witness testimony.[2] In Weaver's written affidavit, he stated:

> I was not involved in the investigation of this case or the hiring of experts. However, I do believe, based on my discussions with Mr. Hall about this case[,] that Mr. Hall's investigation was thorough. I know Mr. Hall watched the forensic video and we discussed it after I had had an opportunity to view it. I also recall watching it several times more prior to the trial. Further, I recall Mr. Hall stating during some of our discussions prior to the trial in this case that because he has had considerable experience with outcry witnesses in the past through his years of representing clients in the child welfare cases, and I have as well, that he was comfortable with cross-examination of the forensic interviewer without the need for an expert. Specifically, I have been representing parents and children involved in child welfare cases in Tarrant County for approximately eight years and I know that Mr. Hall has been doing so as well for at least as long as I have. We have both attended a number of continuing legal education courses in child welfare law where forensic interviewing has been a topic.

Admin. R. 21:122–25, ECF No. 13. Hall also submitted a written affidavit that stated:

> Brandon Weaver, Co-Counsel, and myself have had training in child forensic interviews. We have both

---

[2]Weaver's testimony during the habeas hearing did not conflict with his habeas affidavit. *See* Admin. R. 20: 66–75, ECF No. 13. That is, his testimony at the hearing was identical to his statements in the affidavit except when he was unable to recall what had occurred during Barker's trial.

> attended several seminars regarding sexual assault and abuse with forensic interviewers as presenters that discussed the interviews and how they care [sic] conducted along with what to watch for in the interviews as well as what questions need to be asked of the interviewers at trial. We watched the video of the forensic interview and worked together to develop our trial strategy and focus on what we wanted to bring out from the forensic interviewer during trial. We obtained the information we needed from the forensic interviewer so we could use the information in our closing argument. We did not believe that it was necessary to hire an expert on forensic interviews. We believe that we were adequately prepared for the trial and that we both had the training necessary to question the forensic interviewer and we did so appropriately.

Admin. R. 21:126–27, ECF No. 13.

Hall testified during the habeas hearing that he "didn't feel like [hiring an expert] was necessary. It was pretty straightforward. And this was, like, [his] 13th sex assault trial . . . ." Admin. R. 20:34, ECF No. 13. Hall explained that he had gone to multiple seminars, "some of them based solely on sex abuse, sexual assault cases," while others covered topics on how to cross-examine expert witnesses. *Id*. at 20:34–35. Hall stated that he consulted books relating to the information he had learned at the seminars for Barker's trial. *See id*. at 20:35–36. Hall agreed that during the seminars he had attended, there was discussion about employing experts to assist in cases. *See id*. at 20:38. Hall explained that the discussion indicated that hiring an expert "depend[ed] on the case . . . and on the knowledge the attorney has." *Id*. at 20:38. Hall said that in prior cases, he used experts or consulted with experts when he felt it was necessary, but he did not feel it was needed in Barker's case. *See id*. at 20:42–43. Hall stated their defense was "basically . . . just trying to point out that she [the complainant] was lying." *Id*. at 20:56. He also said that it was "hard to overcome the pictures that had the writing on the [complainant's buttocks]." *Id*. However, "[the Defense] argued that, you know, even though [the photographs were] in there, that's not a crime in and of itself. So [the Defense] tried to point that out to the jury, and you know, tried to put . . . holes in her story." *Id*. Hall explained that an additional part of

their defense strategy was not to attack or "browbeat the witness" in order to not alienate or "offend the jury." *Id*. at 20:59.

Barker offered the testimony of his own expert, Dr. Aaron Pierce, during the hearing. *See* Admin. R. 20:76–145, ECF No. 13. Pierce testified that he was brought in to review Shircliff's testimony and found some of her statements "inconsistent with the scientific literature and therefore very misleading." He believed her testimony concerning peripheral and sensory details was inaccurate because there is "no scientific literature that supports the idea" that an event happened only if someone can describe sensory or peripheral details, and he testified on that topic in past trials. *Id*. at 20:84. Pierce opined that there was "no way to make a determination as to whether or not a child ha[d] been coached" and that Shircliff's stating so was misleading. *Id*. at 20:88. Pierce also stated that as an expert witness, he would have prepared defense counsel regarding what anticipated information Shircliff could testify to for cross-examination purposes and could have "testif[ied] and comment[ed] on the direct testimony of the State's expert." *Id*. at 20:87.

Following the habeas hearing, the trial court adopted the following findings of facts and conclusions of law:

> Findings of Fact:
>
> . . . .
>
> 18.    Mr. Weaver conducted voir dire and cross-examination of the forensic interviewer, Ms. Samantha Shircliff. *See* Weaver Affidavit, p. 1; [3 RR 87, 183, 212].
>
> 19.    Mr. Weaver discussed his anticipated cross-examination with Mr. Hall prior to trial. *See* Weaver Affidavit, p. 2.
>
> 20.    During trial, two photographs of the child victim's buttocks were presented at trial that reflected that Applicant wrote the following words on it:
>
> Left buttock:
>    I ♥ U
>    [illegible]
>    [illegible]
>    [illegible]

Right buttock:
> I'm going here [with an arrow drawn].
> [S.EX. 1, 2; 3 RR 140, 142]

21.    The victim testified at trial that Applicant wrote on her body. [3RR 159-60, 163, 164]

22.    The victim testified that Applicant touched the private part of her body more than ten times. [3 RR 164-66]

23.    The victim testified that Applicant told her his touching her was their "secret" and that he would get into trouble if anyone found out. [3 RR 171]

24.    The victim's aunt testified that she took the picture of Applicant's writing on the victim's buttocks. [3 RR 139]

25.    The victim's aunt testified that the victim told her that Applicant "poked her in the front and the back" on the date Applicant wrote on the victim's buttocks. [3 RR 143-44]

26.    Applicant presented Dr. Aaron Pierce as an expert to show that counsel should have hired an expert to rebut the forensic interviewer. [WRR 76, 79]

27.    Dr. Pierce has never conducted a forensic interview. [WRR 103]

. . . .

33.    Ms. Shircliff testified she had over 300 hours of professional training both in forensic interviewing and other related topics. [3 RR 196]

. . . .

35.    To continue to conduct forensic interviews, Ms. Shircliff undergoes ongoing training, completes monthly peer review, and reads articles on the current research in the field to stay current. [3 RR 196]

36.     Ms. Shircliff meets with other forensic interviewers monthly, shows her interviews to them, and gets feedback to make sure that she maintains best practice and does not fall into bad habits. [3 RR 196]

37.     Ms. Shircliff's questions are based on 'different studies and research that has been done that shows which questions are most appropriate to ask children without being leading or suggesting in any way.' [3 RR 194]

38.     At the time of trial, Ms. Shircliff had completed 966 forensic interviews. [3RR 195]

39.     Ms. Shircliff has testified as an expert in the area of forensic interviews in Tarrant County. [3 RR 195]

. . . .

65.     Ms. Shircliff testified that the research shows that children disclose sexual abuse information differently, depending on the relationship with the perpetrator, the person the information is being disclosed to, and the child's understanding of the "stigma" that comes with sex and private parts. [4 RR9]

66.     There is evidence Ms. Shircliff's testimony is supported by the current research. [WR S.Ex. 1, 2, 3, 4, 5, 6]

67.     There is no evidence that the outcome of the proceeding would have been different had counsel hired an expert to testify that peripheral and sensory details are irrelevant.

68.     There is no evidence that the outcome of the proceeding would have been different had counsel hired an expert to testify that there is no way to know if a victim has been coached.

69.     There is no evidence that the outcome of the proceeding would have been different had counsel hired an expert to explain the 'script' and 'episodic' memories.

Conclusions of Law:

. . . .

15.   Applicant has failed to prove that the forensic interviewer's testimony on peripheral and sensory details was misleading or false.

16.   Applicant has failed to prove that the forensic interviewer's testimony on coaching was misleading or false.

17.   Applicant has failed to prove that the forensic interviewer's testimony on 'script' or 'episodic' memories was false or misleading.

18.   Applicant has failed to prove that an expert witness was required to clear up any misleading or false information.

19.   Applicant has failed to prove that counsel's decision to not call an expert on forensic interviews constituted deficient representation.

20.   Applicant has failed to prove that counsel's decision to not hire an expert for preparation to cross-examine the forensic interviewer constituted deficient representation.

. . . .

27.   Applicant has failed to prove that trial counsel's representation fell below an objective standard of reasonableness.

. . . .

30.   Applicant has failed to show that a reasonable likelihood exists that the outcome of the proceeding would have been different had counsel hired an expert to testify regarding the forensic interview.

31.   Applicant has failed to show that a reasonable likelihood exists that the outcome of the proceeding would have been different had counsel hired an expert to prepare defense counsel for cross-examination of the forensic interviewer.

. . . .

38.   Applicant has failed to show that there is a reasonable probability that the outcome of the proceeding would have been different but for the alleged misconduct.

39.   Applicant has failed to prove that he received ineffective assistance of trial counsel.

Admin. R. 21: 264–83, ECF No. 13. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *Hughes v. Vannoy*, 7 F.4th 380, 387–88 (5th Cir. 2021). Trial counsel's "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690)).

Barker has not shown that the state habeas court's determination regarding his trial counsel's ineffectiveness was mistaken. "[F]ailure to call witnesses at the guilt-innocent and punishment stages is irrelevant absent a showing that . . . appellant would benefit from their testimony." *Pape v. Thaler*, 645 F.3d 281, 289 (5th Cir. 2011) (quoting *Perez v. Tex.*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010)). Although Barker presented testimony during the habeas hearing from his own expert witness (Pierce), Barker did not show how Pierce's testimony would have changed the outcome of his trial, a requirement under *Strickland*. *See* 466 U.S. at 691. The jury did not solely hear from Shircliff, the witness Barker alleges Pierce could have contradicted. The jury also heard from A.M., the complainant, and her aunt, L.M., who discovered the written words on A.M.'s buttocks. Trial counsel admitted they felt that the photographs of the handwriting were more problematic than Shircliff's testimony and focused their defense on discrediting A.M.'s outcry.

A "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Pape*, 645 F.3d at 291 (quoting *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009)). "We must be highly deferential of counsel's conduct and maintain a strong presumption that counsel's trial strategy fell within the wide range of reasonable professional

assistance." *Id.* (citing *Wilkerson v. Collins*, 950 F.2d 1054, 1064 (5th Cir. 1992)). Trial counsel explained multiple times that they felt the case was "straightforward" and that their prior experience was sufficient for them to examine the witnesses the State brought forward.

Nothing in this record suggests that the state habeas ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Mejia*, 906 F.3d at 319 (quoting *Richter*, 562 U.S. at 103)). Thus, there is no reasonable argument that Barker's trial counsel failed to satisfy the *Strickland* standard of effective assistance. *See Richter*, 562 U.S. at 105.

## CONCLUSION

For the reasons discussed, Barker's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. In addition, for the reasons discussed, a certificate of appealability is **DENIED**.

**SO ORDERED** on this **25th day** of **July, 2022**.

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE

13